UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

In re: Chapter 11 case

FRAZER SCHOOL, INC., Case No. 26-10181-MWC

Debtor.
______________________________/

**DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION**

Dated: October 9, 2026

SHUMAKER, LOOP & KENDRICK, LLP

By: /s/ *Steven M. Berman*
Steven M. Berman, Esq.
Florida Bar No.: 856290
sberman@shumaker.com
doberman@shumaker.com
101 E. Kennedy Blvd., Suite 2800
Tampa, Florida 33602
Phone (813) 229-7600
*Counsel for the Debtor*

The Debtor in this chapter 11 case, along with the last four digits of its federal employer identification number, is Frazer School, Inc. (1813).

# Table of Contents


**ARTICLE I** .......... **2**

**DEFINITIONS, RULES OF INTERPRETATION, AND CONSTRUCTION** .......... **2**

**ARTICLE II TREATMENT OF UNCLASSIFIED CLAIMS** .......... **11**

**Section 2.01 Priority / Administrative Claims.** .......... **11**
**Section 2.02 Administrative Claims Bar Date.** .......... **11**
**Section 2.03 Priority Tax Claims.** .......... **12**
**Section 2.04 U.S. Trustee Fees.** .......... **13**

**ARTICLE III CLASSIFICATION, VOTING, AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS AND DISTRIBUTIONS UNDER THE PLAN** .......... **14**

**Section 3.01 Classifications in General** .......... **14**
**Section 3.02 Special Provisions Regarding Unimpaired Claims.** .......... **14**
**Section 3.03 Classification of Classified Claims and Equity Interests.** .......... **14**
**Section 3.04 Voting and Treatment of Classified Claims and Equity Security Interests.** .......... **15**
**Section 3.05 Elimination of Vacant Classes.** .......... **19**
**Section 3.06 Distributions under the Plan** .......... **19**
**Section 3.07 Distribution Deadlines.** .......... **19**
**Section 3.09 De Minimis Distributions.** .......... **19**
**Section 3.10 Unclaimed Distributions.** .......... **20**
**Section 3.11 Stale Checks and Reissuance.** .......... **20**
**Section 3.12 Bar Date** .......... **20**
**Section 3.13 Distributions to Holders of Claims and Equity Interests.** .......... **20**
**Section 3.14 Disputed Claims.** .......... **21**
**Section 3.15 Miscellaneous Distribution Provisions.** .......... **23**

**ARTICLE IV IMPLEMENTATION OF THE PLAN** .......... **23**

**Section 4.01 Implementation.** .......... **23**
**Section 4.02 Funding for the Plan** .......... **23**
**Section 4.03 Management of Reorganized Debtor.** .......... **24**
**Section 4.04 Restructuring Transactions.** .......... **24**
**Section 4.05 Cancellation of Liens.** .......... **24**

**Section 4.06 Vesting of Assets in the Reorganized Debtor. ....24**
**Section 4.07 Governance of the Reorganized Debtor....24**
**Section 4.08 General Settlement of Claims and Compromise of Controversies. ....24**
**Section 4.09 Continuing Existence. ....25**
**Section 4.10 Organizational Documents. ....25**
**Section 4.11 Notice of Effective Date. ....25**
**Section 4.12 Employee Matters and Retiree Benefits. ....25**
**Section 4.13 Corporate Action. ....26**
**Section 4.14 Powers and Duties of the Reorganized Debtor....26**
**Section 4.15 Confidentiality and Privilege. ....27**
**Section 4.16 Retention of Professionals. ....27**
**Section 4.17 Setoffs. ....27**
**Section 4.18 Exemption from Transfer Taxes. ....28**
**Section 4.19 Disputed Payments. ....28**
**Section 4.20 Withholding Taxes. ....28**
**Section 4.21 Liability; Indemnification; No Agency Relationship. ....28**

**ARTICLE V EFFECT OF PLAN ON CLAIMS, INTERESTS, AND CAUSES OF ACTION ....29**

**Section 5.01 Binding Effect. ....29**
**Section 5.02 Term of Injunction or Stays....29**
**Section 5.03 Retention of Rights and Causes of Action. ....29**
**Section 5.04 Releases by Holders of Claims and Interests....30**
**Section 5.05 Injunction and Exculpation. ....30**
**Section 5.06 Preservation and Application of Insurance. ....32**
**Section 5.07 Solicitation of Plan. ....32**
**Section 5.08 Post-Confirmation Activity....32**
**Section 5.09 Post-Confirmation Powers. ....32**
**Section 5.10 Retention of Insurance Claims and Avoidance Actions. ....33**
**Section 5.11 No Release of Claims against Former Management. ....33**

**ARTICLE VI EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ..... 33

**Section 6.01 Executory Contracts and Unexpired Leases.** ..... 33
**Section 6.02 Claims Based on Rejection of Executory Contracts or Unexpired Leases.** ..... 33
**Section 6.03 Notice and Determination of Cure Disputes and Deemed Consent.** ..... 34
**Section 6.04 Payments Related to Assumption or Assignment of Contracts.** ..... 35
**Section 6.05 Effect of Post-Confirmation Rejection.** ..... 35

**ARTICLE VII CONDITIONS TO OCCURRENCE OF EFFECTIVE DATE** ..... 36

**Section 7.01 Conditions to Occurrence of Effective Date.** ..... 36

**ARTICLE VIII GENERAL PROVISIONS** ..... 36

**Section 8.01 Severability.** ..... 36
**Section 8.02 Captions.** ..... 36
**Section 8.03 Governing Law.** ..... 36
**Section 8.04 Modifications or Amendments.** ..... 37
**Section 8.05 Notices.** ..... 37
**Section 8.06 Construction.** ..... 37
**Section 8.07 Dates.** ..... 37
**Section 8.08 Additional Acts or Documents.** ..... 37
**Section 8.09 Retention of Jurisdiction.** ..... 37
**Section 8.10 Effectuating Documents and Further Transactions.** ..... 39
**Section 8.11 Waiver of Bankruptcy Rule 7062.** ..... 39
**Section 8.12 No Admissions.** ..... 39
**Section 8.13 Payment of Statutory Fees.** ..... 39
**Section 8.14 Successors and Assigns.** ..... 39
**Section 8.15 Substantial Consummation.** ..... 40
**Section 8.16 Post-confirmation Fees and Reports.** ..... 40
**Section 8.17 Exemption from Transfer Taxes.** ..... 40

# INTRODUCTION

Frazer School, Inc., the debtor and debtor-in-possession in the above-captioned Chapter 11 case (the "Debtor"), hereby proposes this Chapter 11 Plan of Reorganization (as may be amended and supplemented from time to time) pursuant to Chapter 11 of the United States Bankruptcy Code (the "Plan"). Capitalized terms used herein shall have the meanings ascribed to such terms in Article I of the Plan. The Debtor is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. This Plan contemplates distributions to creditors from funds generated by the Debtor's prepetition and post-petition school operations, the Debtor's acquisition of title to the Subject Property pursuant to the now assumed School Transition Agreement, and funds generated from litigation and prosecution of claims pursuant to Chapter 5 of the Bankruptcy Code and to applicable non-bankruptcy law, including the claims asserted in Adv. Pro. No. 26-01014-MWC.

Reference is hereby made to the Debtor's Disclosure Statement, filed by the Debtor contemporaneously herewith, for a discussion of the Debtor's history, business, and operations, and a summary and analysis of this Plan and other related matters, including risk factors related to the consummation of this Plan and distributions to be made pursuant to this Plan.

**ALL CREDITORS AND HOLDERS OF EQUITY INTERESTS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO BOTH READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY AND CONSULT WITH COUNSEL AND OTHER APPLICABLE PROFESSIONALS BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. WITHOUT LIMITING THE FOREGOING, ALL HOLDERS OF CLAIMS OR EQUITY INTERESTS ARE URGED TO CAREFULLY READ AND EVALUATE THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS SET FORTH IN ARTICLE V. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 3019, THE DEBTOR RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE, OR WITHDRAW THE PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

# ARTICLE I

## DEFINITIONS, RULES OF INTERPRETATION, AND CONSTRUCTION

For purposes of this Plan, except as expressly provided herein or unless the context otherwise requires, all capitalized terms not otherwise defined, including those capitalized terms used in the preceding Introduction, shall have the meanings ascribed to them in Article I of this Plan. Any term used in this Plan that is not defined herein but is defined in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), shall have the same meaning as is ascribed to that term by the Bankruptcy Code or the Bankruptcy Rules, as applicable. To the extent that there is an inconsistency between a definition in this Plan and a definition set forth in the Bankruptcy Code, the definitions set forth herein shall control. Whenever the context requires, such terms shall include the plural as well as the singular number. In addition to the foregoing, any defined terms used in any exhibits attached hereto or any Plan Supplements filed hereafter shall have the meanings ascribed to them in either the applicable exhibit or Plan Supplement or in Article I of this Plan.

"**Administrative Claim**" means a Claim under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, (a) the actual, necessary costs and expenses incurred by the Debtor after the Petition Date of preserving the Estate or operating the Debtor's business; (b) Professional Fee Claims; (c) U.S. Trustee Fees; and (d) any Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court.

"**Adversary Proceeding**" means the adversary proceeding styled as Adv. Pro. No. 26-01014-MWC, commenced by the Debtor on June 19, 2026, against both NCCS, the Schraders, and other third parties and any related or successor proceeding.

"**Allowed**" or "**Allowed Amount**" with respect to a Claim, means the extent to which such Claim and the amount to which the Claim is allowed: (a) is not disallowed or expunged by stipulation or Final Order of the Bankruptcy Court; (b) is not objected to within the period fixed by the Plan or established by the Bankruptcy Court, if the Claim (i) was scheduled by the Debtor pursuant to the Bankruptcy Code and the Bankruptcy Rules in a liquidated amount and not listed as contingent, unliquidated, or disputed, or (ii) was timely filed (or deemed timely filed) pursuant to the Bankruptcy Code, the Bankruptcy Rules, or any applicable orders of the Bankruptcy Court; (c) for which an objection has been filed, but such objection has been withdrawn or determined by a Final Order (but only to the extent such Claim has been allowed); (d) is determined to be valid by the Reorganized Debtor; or (e) is otherwise allowed by Final Order, including, without limitation, the Confirmation Order, after notice and a hearing. A proof of claim that is not timely filed (or not deemed timely filed) shall not be Allowed for purposes of distribution under this Plan.

"**Assets**" means all of the assets of the Debtor of any nature whatsoever, including, without limitation, all property of the Debtor's Estate pursuant to section 541 of the Bankruptcy Code, cash (including cash on hand from prepetition and post-petition business operations, Sale Proceeds, Litigation Proceeds, and Avoidance Action Proceeds), Causes of Action, accounts receivable, tax refunds, claims of right, interests, and property, real and personal, including the Subject Property pursuant to the now assumed School Transition Agreement, tangible and intangible, and proceeds from all of the foregoing.

"**Available Free Cash Flow**" means the positive cash flow from the Debtor's operations, taking into account the Debtor's establishment of a 90-day expense reserve, calculated as follows: revenue from ordinary business operations, less the Debtor's establishment of a 90-day expense reserve, less expenses from ordinary business operations (including payments required under this Plan to holders of Secured Claims).

"**Avoidance Action(s)**" means any and all causes of action and the proceeds thereof which a trustee, Debtor-in-possession, the Debtor, the Estate, the Reorganized Debtor, the Plan Sponsor, or other appropriate party in interest may assert under sections 502(d), 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code or under related state or federal statutes and common law, including, without limitation, fraudulent transfer laws (whether or not litigation is commenced to prosecute such Causes of Action) and including the Debtor's rights of setoff, recoupment, contribution, reimbursement, subrogation or indemnity (as those terms are defined by the non-bankruptcy law of any relevant jurisdiction) and any other indirect claim of any kind whatsoever, whenever, and wherever arising or asserted.

"**Avoidance Action(s) Proceeds**" means any and all net proceeds received or recovered by the Debtor or the Reorganized Debtor by demand, settlement, or litigation of any Avoidance Action.

"**Ballot**" means the ballots accompanying the Disclosure Statement upon which holders of Impaired Claims entitled to vote may indicate their acceptance or rejection of the Plan, which must be actually received on or before the Voting Deadline in accordance with the procedures governing the solicitation process.

"**Balloting Deadline**" means the deadline established by order of the Bankruptcy Court for filing and/or service of ballots voting to accept or reject the Plan.

"**Bankruptcy Code**" means title 11 of the United States Code, as in effect on the Petition Date, together with all amendments and modifications thereto that are subsequently made applicable to this Chapter 11 Case.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Northern District of Florida, Gainesville Division, which has jurisdiction over this Chapter 11 Case.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code, and any applicable rules of the Bankruptcy Court, as amended from time to time and as applicable to this Chapter 11 Case.

"**Bar Date**" means such date(s) established by the Bankruptcy Court as the last date for filing proofs of claim against the Debtor. In this Chapter 11 Case, the Bar Date was August 21, 2026, for Creditors generally, and is 180 days after the Petition Date, or December 9, 2026, for Creditors that are governmental units.

"**Building PSA**" means the purchase and sale agreement for the Subject Property between

NCCS, as seller, and the Debtor (or its designee), as buyer, in the form adopted by order of this Bankruptcy Court pursuant to the Interim Order Granting Motion to Assume School Transition and Asset Purchase Agreement Executory Contracts and to Compel Performance (Doc. 204), as the same may be amended. The Building PSA may be used to convey the Subject Property or the Bankruptcy Court may, alternatively order the conveyance of the Subject Property to the Debtor.

"**Business Day**" means any day, excluding Saturdays, Sundays, or "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in Gainesville, Florida.

"**Capital City Bank**" means Capital City Bank, as holder of the mortgage loan designated as Loan 1731 encumbering the Subject Property.

"**Causes of Action**" means any and all actions, causes of action, claims, rights, defenses, liabilities, obligations, executions, choses in action, controversies, rights (including rights to legal remedies, rights to equitable remedies, rights to payment), suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims or any other claims whatsoever, whether known or unknown, reduced to judgment or not reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, choate or inchoate, existing or hereafter arising, suspected or unsuspected, foreseen or unforeseen, and whether asserted or assertable directly, indirectly or derivatively, at law, in equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of this Chapter 11 Case, including through and after the Effective Date. For the avoidance of doubt, Causes of Action shall include, but not be limited to, all Causes of Action arising in, arising under or related to Title 11 of the United States Code as well as Causes of Action arising under applicable non-bankruptcy law. All Causes of Action shall be retained by the Debtor and Debtor-in-Possession and be transferred to the Reorganized Debtor following confirmation and the occurrence of the Effective Date.

"**Chapter 11 Case**" means the Chapter 11 bankruptcy case, *sub judice*, Case Number 26-10181-MWC, commenced by the Debtor on the Petition Date and now pending in the Bankruptcy Court.

"**Claim**" or "**Claims**" means a claim or claims against the Debtor, as such term is defined in section 101(5) of the Bankruptcy Code, whether or not asserted, whether or not a Proof of Claim is filed, whether or not the facts or legal bases therefor are known or unknown, and specifically including, without express or implied limitation, any rights under sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, any claim of a derivative nature, any potential or unmatured contract claim, and any other contingent claim.

"**Class**" means a category of Claims or Equity Interests pursuant to section 1122(a) of the Bankruptcy Code, as set forth in Articles II and III of the Plan.

"**Collateral**" means any property or interest of the Estate subject to an unavoidable Lien to secure the payment or performance of a Claim.

"**Confirmation**" means the entry of the Confirmation Order on the docket of this Chapter 11 Case, subject to all conditions specified having been (a) satisfied or (b) waived.

"**Confirmation Date**" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of this Chapter 11 Case, within the meaning of Bankruptcy Rules 5003 and 9021.

"**Confirmation Hearing**" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to, among others, section 1129 of the Bankruptcy Code.

"**Creditor**" means any holder of a Claim against the Debtor or its Estate.

"**Cure**" means the Distribution of cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect any net amount due associated with the assumption or assumption and assignment of an Executory Contract or Unexpired Lease, pursuant to section 365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed upon by the parties, under such Executory Contract or Unexpired Lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable nonbankruptcy law.

"**Debtor**" has the meaning ascribed to it in the Introduction to this Plan.

"**Disallowed**" means, with respect to any Claim, Equity Interest, or portion thereof, any Claim against or Equity Interest in the Debtor which: (i) has been disallowed, in whole or part, by a Final Order; (ii) has been withdrawn by agreement of the holder thereof and the Debtor, in whole or in part; (iii) has been withdrawn, in whole or in part, by the holder thereof; (iv) if listed in the Schedules as zero or as disputed, contingent, or unliquidated and in respect of which a Proof of Claim has not been filed or deemed filed or Allowed or deemed Allowed pursuant to the Plan, the Bankruptcy Code or any Final Order of the Bankruptcy Court or other applicable law in a liquidated non-contingent amount; (v) has been reclassified, expunged, subordinated or estimated to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the filed amount of any Proof of Claim; (vi) is evidenced by a Proof of Claim which has been filed, or which has been deemed to be filed under applicable law or order of the Bankruptcy Court or which is required to be filed by order of the Bankruptcy Court but as to which such Proof of Claim was not properly or timely filed; (vii) is unenforceable to the extent provided in section 502(b) of the Bankruptcy Code; (viii) where the holder of a Claim or Equity Interest is a person or entity from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, unless such person, entity or transferee has paid the amount, or turned over any such property, for which such person, entity or transferee is liable under sections 522(i), 542, 543, 550, or 553 of the Bankruptcy Code; (ix) is for reimbursement or contribution that is contingent as of the time of allowance or disallowance of such Claim or Equity Interest; or (x) is disallowed by Final Order on any other ground permitted

by applicable law. A Claim shall not be disallowed solely because its holder is or was an officer, director, equity holder, or insider of the Debtor. Insider claims shall be governed by the treatment of Class 6, subject to applicable law and any Final Order. In each case, a Disallowed Claim or Equity Interest is Disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination or estimation.

"**Disclosure Statement**" means the disclosure statement for the Plan, as amended, supplemented, or modified from time to time, describing the Plan that is prepared and distributed in accordance with, among others, section 1125 of the Bankruptcy Code and other applicable law.

"**Disputed Claim**" means a Claim that is neither an Allowed Claim nor a Disallowed Claim, and is any Claim, proof of which was filed, or an Administrative or other unclassified Claim, which is the subject of a dispute under the Plan or as to which Claim the Debtor or the Reorganized Debtor has interposed a timely objection and/or a request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018 or other applicable law, which dispute, objection, and/or request for estimation has not been withdrawn or determined by a Final Order of the Bankruptcy Court, and any Claim, proof of which was required to be filed by order of the Bankruptcy Court, but as to which a proof of claim was not timely or properly filed (or deemed timely or properly filed).

"**Distribution**" means any Distribution to holders of Allowed Claims or Equity Interests in accordance with the Plan of any Assets or other consideration distributed pursuant to the Plan.

"**Educator Board**" means the Debtor's board of directors elected pursuant to the School Transition Agreement, which holds full control over the business and operations of the Frazer School.

"**Effective Date**" means a Business Day, selected by the Debtor or the Reorganized Debtor, as applicable, on which all conditions to the Effective Date have been satisfied, or if permitted, waived by the Debtor or Reorganized Debtor and on which no stay of the Confirmation Order shall be pending or in place.

"**Equity Credit**" means at least the $5,119,262.85 credit to the Debtor against the purchase price of the Subject Property provided for in the School Transition Agreement.

"**Equity Interests**" means the legal interests, equitable interests, contractual interests, equity interests or ownership interests, or other rights of any person or entity in the Debtor, including all capital stock, stock certificates, common stock, preferred stock, partnership interests, limited liability company or membership interests, rights, treasury stock, options, warrants, contingent warrants, convertible or exchangeable securities, investment securities, subscriptions or other agreements and contractual rights to acquire or obtain such an interest or share in the Debtor, membership interests, partnership interests in the Debtor's stock appreciation rights, conversion rights, repurchase rights, redemption rights, dividend rights, preemptive rights, subscription rights and liquidation preferences, puts, calls, awards or commitments of any character whatsoever relating to any such equity, common stock, preferred stock, ownership interests or other shares of capital stock of the Debtor or obligating the Debtor to issue, transfer or

sell any shares of capital stock whether or not certificated, transferable, voting or denominated "stock" or a similar security. For the avoidance of doubt, while the Equity Interests of the Debtor are held by the Educator Board, they are held for the not-for-profit purpose consistent with the Florida not-for-profit corporate status as well as the 501(c)(3) designation approved by the Internal Revenue Service, Department of Treasury.

"**Estate**" means the estate of the Debtor created by section 541 of the Bankruptcy Code upon the commencement of this Chapter 11 Case on the Petition Date.

"**Executory Contract**" means a contract to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

"**Final Order**" means an order or judgment as to which the time to appeal, petition for *certiorari*, or move for re-argument or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for re-argument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, move for re-argument or rehearing shall have been waived in writing or, in the event of an appeal, writ of *certiorari* or re-argument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed or *certiorari* has been denied, or from which re-argument or rehearing was sought, and the time to take any further appeal, petition for *certiorari*, or motion for re-argument or rehearing shall have expired.

"**General Unsecured Claim**" means an unsecured Claim against the Debtor, including both the undersecured portion of any Secured Claim and any Claim arising from the rejection of an Executory Contract or Unexpired Lease, but specifically excluding any Administrative Claims, Priority Tax Claims, other Priority Claims, or Secured Claims, and excluding Insider Claims classified in Class 6.

"**Impaired**" means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"**Insider Claims**" means any Claim held by NCCS, the Schraders, Little Warriors Day School, LLC, or any of their respective affiliates, insiders, successors, or assigns, including, without limitation, any Claim relating to the Lease or the Transition Agreement.

"**Lien**" means, with respect to any asset or property (or the rents, revenues, income, profits or proceeds therefrom), and in each case, whether the same is consensual or nonconsensual or arises by contract, operation of law, legal process or otherwise: (a) any and all mortgages or hypothecation to secure payment of a debt or performance of an obligation, liens, pledges, attachments, charges, leases evidencing a capitalized lease obligation, conditional sale or other title retention agreement, or other security interest or encumbrance or other legally cognizable security devices of any kind in respect of any asset or property, or upon the rents, revenues, income, profits or proceeds therefrom; or (b) any arrangement, express or implied, under which any property is transferred, sequestered or otherwise identified for the purpose of subjecting or making available the same for the payment of debt or performance of any other obligation in priority to

the payment of General Unsecured Creditors; *provided*, *however*, that a lien that has or may be avoided pursuant to any Avoidance Action shall not constitute a lien hereunder.

"**Litigation Proceeds**" means any and all net recoveries received by the Debtor, the Estate, or the Reorganized Debtor from the Causes of Action.

"**NCCS**" means Newberry Christian Community School, Inc., a Florida not-for-profit corporation.

"**Petition Date**" means June 12, 2026, the date on which the Debtor filed its voluntary petition for relief commencing this Chapter 11 Case.

"**Plan**" means this plan of reorganization under chapter 11 of the Bankruptcy Code, including, without limitation, any exhibits, appendices, and schedules hereto and to be filed with the Plan Supplement, such as may be altered, amended, modified or supplemented from time to time in accordance with their terms and the Bankruptcy Code or the Bankruptcy Rules.

**"Plan Period"** means 60 full months beginning on the first day of the first full month following the Effective Date.

"**Plan Supplement**" means any supplemental documents, schedules, and exhibits to the Plan, to be filed by the Debtor. The Debtor shall have the right to amend all documents contained in, and exhibits to, the Plan Supplement through the Effective Date.

"**Priority Claim**" means a Claim of the type described in Section 507 of the Bankruptcy Code.

"**Priority Tax Claim**" means any and all Claims of a Governmental Unit of the kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

"**Professional**" means any professional employed in this Chapter 11 Case pursuant to Bankruptcy Code sections 327, 328, 1103, 105(a), 363(c) or other order of the Bankruptcy Court.

**"Professional Fee Claim"** means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

"**Professional Fee Claim Deadline**" means the date that is 30 days after the Effective Date by which all Professionals or other persons or entities requesting compensation or reimbursement of Professional Fee Claims for services rendered before the Effective Date (including compensation requested by any Professional or other entity for making a substantial contribution in this Chapter 11 Case) shall file an application for final allowance of compensation and reimbursement of expenses, as set forth in Section 2.02 below.

"**Proof of Claim**" means a proof of claim filed with the Bankruptcy Court in this Chapter 11 Case.

"**Pro Rata Share**" means, solely, where the Plan expressly provides for a pro rata Distribution to a Class, the ratio of the amount of an Allowed Claim in that Class to the aggregate amount of all Allowed Claims in that Class along with the amounts reserved for Disputed Claims in that Class pursuant to Section 3.14. That ratio shall be adjusted as Disputed Claims are resolved. This definition does not aggregate different Classes or alter any obligation to pay an Allowed Claim in full under its applicable treatment.

"**Released Party**" or "**Released Parties**" means each of the following in its capacity as such: (a) the Debtor and Debtor-in-Possession; (b) the Debtor's officers and directors serving on or after December 18, 2025, including the members of the Educator Board; (c) the Debtor's counsel and accountants providing services after such date; and (d) with respect to each of the foregoing persons and entities in subsections (a) through (c), such person's or entity's current and former subsidiaries, predecessors, successors, assigns, heirs, agents, principals, officers, directors, managers, members, employees, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, excluding any parties that are liable for willful misconduct or are the subject of any Avoidance Actions or insurance claims. For the avoidance of doubt, none of NCCS, the Schraders, Little Warriors Day School, LLC, any of their affiliates, or any former officer, director, employee, or bookkeeper of the Debtor who served prior to December 18, 2025, or any Person or Party against whom claims or causes of action are asserted, shall be a Released Party.

"**Releasing Party**" or "**Releasing Parties**" means each of the following in its capacity as such: (a) the holders of Claims and Equity Interests that are Unimpaired and deemed to accept the Plan; (b) all holders of Claims and Equity Interests whose Claims or Equity Interests are disclosed on the Debtor's Schedules without designation as contingent, unliquidated, or disputed, or who timely filed Proofs of Claims, or such Proofs of Claims are deemed timely filed, asserting such Claims or Equity Interests; and (c) all counterparties to Executory Contracts or counterparties to Unexpired Leases whose leases were assumed or rejected in the Plan or during this Chapter 11 Case.

"**Reorganized Debtor**" means the Debtor, or any successors thereto, by merger, consolidation, or otherwise on or after the Effective Date, including any new entity formed to directly or indirectly acquire the assets or equity of the Debtor.

"**Schedules**" means, unless otherwise specified, the respective schedules of assets and liabilities, the list of holders of Equity Interests, and the statements of financial affairs filed by the Debtor in accordance with section 521 of the Bankruptcy Code, as such schedules and statements have been or may be supplemented or amended on or prior to the Effective Date.

"**School Transition Agreement**" and "**Transition Agreement**" each mean the School Transition and Asset Purchase Agreement dated December 17, 2025, among the Debtor, NCCS, the Schraders, and Edge Content, LLC, now assumed by the Debtor pursuant to 11 U.S.C. § 365.

"**Schraders**" means James R. Schrader and Rachel E. Schrader, individually and collectively.

"**Schrader Mortgage**" means the Second Mortgage and Security Agreement allegedly granted by NCCS in favor of the Schraders, recorded March 10, 2026, in the Official Records of Alachua County, Florida, as Instrument No. 2678453, at Book 5260, Pg. 1-25, reciting a promissory note in the amount of $1,477,991.00.

"**Secured Claim**" means any Claim that is secured by a Lien on any Asset of the Debtor, or right of setoff, which Lien or right of setoff, as the case may be, is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, but only to the extent of the value, pursuant to section 506(a) of the Bankruptcy Code, of any interest of the holder of such Claim in property of the Estate(s) securing such Claim. Except as expressly provided in the Plan or a Final Order, this definition does not create or validate any Lien. Nothing in this definition prohibits acquisition financing or refinancing expressly authorized under the Plan or alters the treatment required by a valid election under section 1111(b) of the Bankruptcy Code. Secured status and collateral value shall be determined under section 506 of the Bankruptcy Code, subject to any applicable section 1111(b) election.

"**Subject Property**" means the real property and improvements located at 4700 N.W. 89th Boulevard, Gainesville, Florida 32606, from which the Debtor conducts its school operations.

"**Unclaimed Distribution**" means a distribution that is returned as undeliverable or remains uncashed or otherwise uncollected. Designation as an Unclaimed Distribution does not, by itself, disallow or discharge the underlying Claim or extinguish entitlement to subsequent Distributions.

**"Unexpired Lease**" means a lease of non-residential real property to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

**"Unsecured Claim**" means a Claim arising prior to the Petition Date against the Debtor that is neither a Secured Claim nor entitled to priority under section 507 of the Bankruptcy Code or any order of the Bankruptcy Court, which Claim may be a General Unsecured Claim. An Unsecured Claim may include the unsecured portion of an otherwise Secured Claim.

**"Unsecured Ongoing Operations Claims"** means a Claim of any creditor currently providing goods or services to the Debtor.

"**U.S. Trustee**" means the Office of the United States Trustee for Region 21, serving the Northern District of Florida.

"**U.S. Trustee Fees**" means fees arising under section 1930(a)(6) of title 28 of the United States Code.

"**Voting Deadline**" means the date and time by which all Ballots to accept or reject the Plan must be received in order to be counted.

## ARTICLE II
## TREATMENT OF UNCLASSIFIED CLAIMS

**Section 2.01 Priority / Administrative Claims**.

(a) The unclassified claims consist of all Allowed Administrative Claims and other priority Claims under sections 503(b) and 507(a)(2) of the Bankruptcy Code incurred by the Debtor from the Petition Date through the Effective Date. Such claims include (i) costs for Professionals, including Shumaker, Loop & Kendrick, LLP ("Shumaker"), as counsel for the Debtor (Shumaker has provided legal services to the Debtor on a pro bono basis since the Petition Date and will not seek attorneys' fees for those services through the Effective Date; post-Effective Date services shall be governed by Section 4.16); (ii) any unpaid quarterly fees due to the U.S. Trustee, if any; (iii) any superpriority claims of holders of cash collateral granted under sections 503(b) and 507(b) of the Bankruptcy Code pursuant to the Bankruptcy Court's orders authorizing the use of cash collateral, to the extent Allowed; and (iv) any unpaid post-petition obligations of the Debtor's Estate, if any, including amounts owed to any taxing authority.

(b) To the extent not already satisfied prior to the Effective Date and unless the holder of an Allowed Administrative Claim agrees to different treatment, each holder of an Administrative Claim Allowed on or before the Effective Date shall receive, in full satisfaction of such Claim, cash equal to its unpaid Allowed amount on the Effective Date. An Administrative Claim Allowed after the Effective Date shall be paid within thirty (30) days after allowance, or on such other date as the Bankruptcy Court orders or the holder agrees. Administrative Claims incurred in the ordinary course of business shall be paid when due under their applicable terms, unless otherwise ordered by the Bankruptcy Court.

**Section 2.02 Administrative Claims Bar Date**.

(a) Except for (i) Professional Fee Claims governed by section 2.02(b), (ii) U.S. Trustee Fees, (iii) Administrative Claims previously Allowed by order the Bankruptcy Court, (iv) ordinary course Administrative Claims payable under their applicable terms, and (v) Claims exempt from a request requirement under applicable law, requests for payment of Administrative Claims arising through the Effective Date must be filed no later than thirty (30) days after the Effective Date or such later date as the Bankruptcy Court orders. The Debtor or Reorganized Debtor, as applicable, shall serve notice of the applicable deadline on known holders of Administrative Claims required to request payment.

(b) All Professionals or other persons or entities requesting compensation or reimbursement of Professional Fee Claims for services rendered or expenses incurred through the Effective Date (including compensation requested for making a substantial contribution in this Chapter 11 Case) shall file an application for final allowance of compensation and reimbursement of expenses no later than thirty (30) days after the Effective Date, unless otherwise ordered by this Court. Objections to applications of Professionals or other entities for compensation or reimbursement of expenses must be filed no later than twenty-one (21) days after any such application is filed. All compensation and reimbursement of expenses allowed by the Bankruptcy

Court shall be paid in accordance with Section 2.01(b), subject to the terms of the applicable allowance order.

**Section 2.03 Priority Tax Claims of the Internal Revenue Service and the Florida Department of Revenue (Class 2)**

(a) **Holders**. Section 2.03 governs the Allowed Priority Tax Claims of (i) the Internal Revenue Service (the "IRS"), scheduled in the amount of $667,298.24 and asserted by Proof of Claim No. 2-1 in the total amount of $777,937.25 (priority claimed: $609,362.39), consisting principally of unpaid federal employment and withholding tax obligations of the Debtor, and (ii) the Florida Department of Revenue ("FDOR"), to the extent of its Proof of Claim No. 3-1 in the total amount of $2,763.94 (priority claimed: $2,763.94). The Debtor classifies the IRS and FDOR Claims in Class 2, and the treatment set forth in this Section 2.03 constitutes the treatment of Class 2.

(b) **Treatment of Tax Principal**. Unless the holder and the Debtor or Reorganized Debtor agree to different and less favorable treatment, the Reorganized Debtor shall pay the Allowed tax principal amount of each such Priority Tax Claim in equal monthly installments, amortized on a straight-line basis, commencing on the first day of the first full month following the Effective Date and ending not later than five (5) years after the Petition Date (i.e., on or before June 12, 2031), together with interest on the unpaid balance at the rate determined pursuant to section 511 of the Bankruptcy Code and applicable nonbankruptcy law as of the month of the Effective Date. The Reorganized Debtor may prepay any Allowed Priority Tax Claim, in whole or in part, without penalty. For the avoidance of doubt, the Debtor will only repay the tax principal amount due to the Internal Revenue Service, on account of James Schrader's failure to pay federal employment withholding taxes he collected from employees and failed to remit, and any interest and penalties due to the Internal Revenue Service shall be paid by the Schraders pursuant to Section 6.1 of the School Transition Agreement.

(c) **Penalties and Prepetition Interest.** Consistent with the School Transition Agreement, the Debtor's obligation under the Plan is limited to the tax principal owed, and all penalties, additions to tax, and prepetition interest assessed on account of such taxes owed to the Internal Revenue Service ("IRS") remain the obligation of the Schraders, jointly and severally, as provided in the School Transition Agreement. To the extent any such penalty, addition, or interest is Allowed against the Debtor, (i) any penalty that is not compensation for actual pecuniary loss shall receive no Distribution consistent with the foregoing, and (ii) the Reorganized Debtor retains all rights of subrogation and recovery against the Schraders or NCCS with respect to such amounts, including, without limitation, in the Adversary Proceeding. Nothing in this Plan releases the Schraders, NCCS, or any responsible person from liability to the IRS or Florida Department of Revenue ("FDOR").

(d) **Default**. If the Reorganized Debtor fails to make any payment under this Section 2.03 and does not cure within fifteen (15) days after written notice of default, the IRS or FDOR, as applicable, may exercise its administrative collection remedies under applicable nonbankruptcy law as to the unpaid balance of its Allowed Claim.

(e) **Trust Fund Recovery Penalty**. Consistent with Section 6.1 of the School Transition Agreement, if a Trust Fund Recovery Penalty or similar penalty is imposed against the Schraders, (i) every amount paid by or collected from the Schraders and credited against the Debtor's tax liability shall reduce the Allowed IRS Priority Tax Claim dollar for dollar, and (ii) the Reorganized Debtor may recover from the Schraders, jointly and severally, any amount it pays under this Section 2.03, other than for principal tax indebtedness. Nothing in this Plan limits the IRS's direct rights against the Schraders, but the IRS may not collect more than the total amount owed.

**Section 2.04 U.S. Trustee Fees.**

The Debtor or the Reorganized Debtor, as applicable, shall pay all U.S. Trustee Fees, in accordance with the terms of this Plan, until such time as the Bankruptcy Court enters an order administratively closing this Chapter 11 Case or a final decree closing this Chapter 11 Case.

## ARTICLE III
## CLASSIFICATION, VOTING, AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS AND DISTRIBUTIONS UNDER THE PLAN

**Section 3.01 Classifications in General**.

Pursuant to sections 1122 and 1123 of the Bankruptcy Code, Claims and Equity Interests are classified for all purposes, including, without limitation, voting, Confirmation, and Distribution pursuant to the Plan as set forth herein. Priority Tax Claims are classified in Class 2. A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent such Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.

**Section 3.02 Special Provisions Regarding Unimpaired Claims**.

Unless otherwise provided in this Plan, nothing under the Plan shall affect the rights of the Debtor or Reorganized Debtor, as applicable, with respect to any Unimpaired Claims, including all rights with respect to legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

**Section 3.03 Classification of Classified Claims and Equity Interests**.

Claims against the Debtor, other than Administrative Claims, are classified for all purposes (unless otherwise specified), including voting and Distribution pursuant to the Plan, as follows:

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | N | N |
| 2 | Priority Tax Claims of the IRS and FDOR | Y | Y |
| 3 | Secured Claim of Capital City Bank | Y | Y |
| 4 | Secured Claims (Joyner; Gen Z Consulting; NV5; Paul Stresing; Dudases) | Y | Y |
| 5 | General Unsecured Claims | Y | Y |
| 6 | Insider Claims (including Schrader Mortgage Claim) | Y | Y |
| 7 | Equity Interests | Y | N (deemed to reject) |

**Section 3.04 Voting and Treatment of Classified Claims and Equity Security Interests.**

Except for Classes deemed to accept or reject the Plan under section 1126(f) or (g) of the Bankruptcy Code, each impaired class of Claims and Equity Security Interests shall be entitled to ballot for or against confirmation of this Plan in accord with 11 U.S.C. §§ 1122, 1124, 1125, 1126 and 1129. In accord with such provisions of the Bankruptcy Code, members of each class of Claims and holders of Equity Interests may ballot their Claims or Equity Security Interests for or against Plan confirmation. An impaired Class of Claims or Equity Security Interests ballots in favor of Plan confirmation if the holders of Claims or Equity Interests in such class ballot in favor of confirmation with holders of Claims or Equity Interests, holding at least two-thirds in amount and more than one-half in number of the allowed claims of such class, balloting in favor of confirmation of the Plan. Each Class of Claims and Equity Interests shall be treated under this Plan, as follows:

**Class 1 – Priority Non-Tax Claims**

Class 1 consists of all Allowed Claims entitled to priority under sections 507(a)(3) through 507(a)(7) of the Bankruptcy Code, including Claims of employees for prepetition wages and benefits to the extent not previously paid pursuant to order of the Bankruptcy Court. To the extent not already satisfied prior to the Effective Date and unless the holder and the Debtor or Reorganized Debtor, as applicable, have agreed to different and less favorable treatment, each holder of an Allowed Class 1 Claim shall receive cash equal to the amount of such Allowed Claim on the later of (i) the Effective Date and (ii) 60 days after such Claim becomes Allowed. Class 1 is Unimpaired and is deemed to accept the Plan.

**Class 2 – Priority Tax Claims of the IRS and FDOR**

Class 2 consists of the Allowed Priority Tax Claims of the IRS and FDOR, each of which shall be treated as a separate subclass for voting and Distribution purposes. Each holder of an Allowed Class 2 Claim shall receive the treatment set forth in Section 2.03, which is incorporated into this Class 2, including payment of the Allowed tax principal in equal monthly installments, amortized on a straight-line basis, ending not later than five (5) years after the Petition Date, with all penalties and interest on such principal tax indebtedness being the affirmative obligation of the Schraders to pay the IRS as provided in the Transition Agreement. Class 2 is Impaired and entitled to vote.

**Class 3 – Secured Claim of Capital City Bank**

Class 3 consists of the Allowed Secured Claim of Capital City Bank arising under Loan ending in number 1731 and secured by a mortgage on the Subject Property. Commencing on the Effective Date, the Reorganized Debtor shall continue to make monthly payments to Capital City Bank on the 23rd day of each month in the amount the Debtor is paying as adequate protection pursuant to the Interim Order Granting Debtor's Motion for Entry of Order Approving Adequate Protection Payments to Capital City Bank (Doc. 141) (as of the date of this filing, $41,024.22 per month, comprising principal and interest of $33,122.12 and escrow of $7,902.10); provided, however, that on or before the Effective

Date such monthly payment shall be reduced so that it includes only: (i) principal and interest under Loan ending in number 1731 and (ii) escrow for ad valorem taxes and property insurance attributable solely to the Subject Property. The Debtor understands that the escrow component of the current payment includes premiums for insurance on real property of another school that is not the Subject Property and not property of the Debtor; the Reorganized Debtor shall not be obligated to pay, and the Class 3 payment shall exclude, any insurance, taxes, or other charges attributable to any property other than the Subject Property. The payment shall remain subject to adjustment as Capital City Bank updates the variable interest rate and the Subject Property escrow under the subject loan documents. Each payment shall be applied first to accrued, unpaid contract-rate interest, second to escrow for Subject Property taxes and insurance, and third to principal. The entire remaining balance of the Allowed Class 3 Claim shall be due and payable on the fifth (5th) anniversary of the Effective Date or, if earlier, at the election of the Debtor, upon refinancing. Consistent with the terms and provisions of the School Transition Agreement, the Debtor may, but is not obligated to, refinance the mortgage due and owing to Capital City Bank. If any payment is not made when due, Capital City Bank may serve written notice of default on the Reorganized Debtor and its counsel, and the Reorganized Debtor shall have five (5) days after service of such notice to cure. Capital City Bank shall retain its Lien until its Allowed Class 3 Claim is paid in full. Nothing in this Plan alters Capital City Bank's rights as against any non-Debtor obligor or guarantor, or under the Cross-Collateralization and Cross-Default Agreement dated May 23, 2025, as against any party other than the Debtor. Class 3 is Impaired and entitled to vote.

**Class 4 – Secured Claims (Joyner, Guarav Seth, NV5, Paul Stresing, and the Dudases)**

Class 4 consists of all Allowed Secured Claims other than the Class 3 Claim, including the Claims asserted by (a) Joyner Construction Partners, LLC ("Joyner"), scheduled in the amount of $1,700,517.00 (Class 4A); (b) Guarav Seth, including any Claim asserted by or through Gen Z Consulting LLC, an entity of Guarav Seth, which shall be treated as a single Claim (Class 4B); (c) NV5, Inc. (Class 4C); (d) Paul Stresing Associates, Inc. (Class 4D); and (e) Kurt and Brittany Dudas (the "Dudases"), scheduled in the amount of $3,175,000.00 (Class 4E), each of which shall be treated as a separate subclass for voting and Distribution purposes.

**Treatment.** The Allowed amount of each Class 4 Claim shall be amortized over a 10 year amortization and paid in sixty (60) equal monthly installments of principal, amortized on a straight-line basis, commencing on the first day of the first full month following the Effective Date, along with simple interest on the unpaid principal balance at the 30-day Average SOFR rate plus 100 basis points, determined as of the Effective Date, with a balloon being due on the expiration of the sixty (60) months following the Effective Date. The Reorganized Debtor may prepay any Allowed Class 4 Claim, in whole or in part, without penalty, including at the closing of the Debtor's acquisition of the Subject Property. Each holder shall retain its Lien, to the extent valid, perfected, and unavoidable, until its Allowed Class 4 Claim is paid in full. To the extent a Class 4 Claim is not secured by a validly created and timely perfected and unavoidable Lien, based upon the priority of

perfection in relation to the value of the subject collateral as of the Petition Date, consistent with 11 U.S.C. § 506, such Claim shall be treated as a Class 5 General Unsecured Claim.

**Joyner (Class 4A). C**onsistent with the Transition Agreement's purchase price formula, Joyner's Claim shall be Allowed only to the extent it is for construction services Joyner actually performed at the Subject Property, for which documentation is provided satisfactorily evidence materials delivered to the Subject Property and then used at the Subject Property or for construction services at the Subject Property, for which no payment has yet been made, and any portion of Joyner's asserted Claim that is not for such services shall be Disallowed.

**Dudases (Class 4E)**. The Dudases advanced funds to the Debtor on an unsecured basis, approximately five to six months before the Debtor executed a promissory note and then purported to grant them security interest on or about November 17, 2025, to document that prior unsecured cash infusion. The Debtor disputes the validity, perfection, and enforceability of the Dudas'es Lien and contends that such Lien is avoidable pursuant to, without limitation, sections 544, 547, 548, and 550 of the Bankruptcy Code and applicable Florida law, and the Debtor reserves all such rights. The Allowed Class 4E Claim shall be reduced, dollar for dollar, by any amounts the Dudases receive or recover on account of the indebtedness from any collateral source other than the Debtor, including, without limitation, guarantors, co-obligors, insurance, NCCS, the Schraders, or any recovery in other litigation (the "Collateral Source Recoveries"), and shall be paid net of all Collateral Source Recoveries. The Dudases shall promptly disclose to the Reorganized Debtor each Collateral Source Recovery, and the remaining installments shall be recalculated to reflect that Collateral Source Recovery; any payment by the Reorganized Debtor, that, after giving effect to Collateral Source Recoveries, exceeds the net Allowed Class 4E Claim shall be refunded to the Reorganized Debtor.

**Reservation of Rights.** The Debtor expressly reserves all rights to object to the amount of each Class 4 Claim and to challenge the validity, priority, extent, perfection, and avoidability of each Class 4 Lien.

Class 4 is Impaired and entitled to vote.

**Class 5 – General Unsecured Claims**

Class 5 consists of all Allowed General Unsecured Claims, including the unsecured or undersecured portion of any Class 3 or Class 4 Claim and the Claims of the families and other lenders who advanced funds to the Debtor, but excluding Insider Claims. Holders of Allowed Class 5 Claims shall receive their Pro Rata Share of fifty percent (50%) of the Debtor's Available Free Cash Flow during the Plan Period, payable in equal quarterly installments in year one (1) of the Plan Period, beginning on the Effective Date or as soon as reasonably practicable thereafter, and in annual installments in years two (2) through five (5), beginning on the first anniversary of the date the first quarterly payment was made in year one (1). Any remaining unpaid balance of each Allowed Class 5 Claim shall be paid in full, without interest, in a balloon payment on the last day of the sixtieth (60th)

month of the Plan Period. Any holder of a Class 5 Claim who received payment on its Claim from the Debtor post-petition is deemed to have received an advance payment of its Class 5 Claim, which shall be offset against its Distributions. Holders of Disputed Class 5 Claims shall receive, upon allowance, a catch-up payment equal to the Distributions that would have been paid had the Claim been Allowed on the Effective Date, and subsequent Distributions thereafter. Class 5 is Impaired and entitled to vote.

**Class 6 – Insider Claims**

Class 6 consists of all Insider Claims, including the Claim scheduled in favor of James Schrader, any Claim of NCCS arising under the Transition Agreement or the Lease, any Claim asserted by the Schraders on account of the Schrader Mortgage, and any other Claim held by a person or entity whose inequitable conduct injured the Debtor or its Creditors. All Insider Claims are Disputed. Pursuant to section 510(c) of the Bankruptcy Code, all Allowed Insider Claims shall be equitably subordinated to all other Allowed Claims, and any Lien securing an Insider Claim shall be transferred to the Estate, on account of the inequitable conduct of the Schraders and NCCS, which injured the Debtor and its Creditors and conferred an unfair advantage on the holders of Insider Claims, including, without limitation, (i) the diversion of approximately $5,105,000.00 in funds lent by the families to acquire the Subject Property, which was instead titled in NCCS and purported to be leased back to the Debtor; (ii) transfers of the Debtor's funds of at least $2,084,656.86 to NCCS, $2,336,983.33 to James R. Schrader, $171,762.40 to Rachel E. Schrader, and $72,000.00 to Little Warriors Day School, LLC; (iii) the grant of the Schrader Mortgage by NCCS in favor of the Schraders approximately three months after execution of the School Transition Agreement; (iv) the refusal to execute the Building PSA and the commencement of the eviction proceeding, Case No. 2026-CA-001730 in the Circuit Court of the Eighth Judicial Circuit in and for Alachua County, Florida; and (v) the removal and retention of the Debtor's books and records. The Debtor objects to any Claim asserted on account of the Schrader Mortgage, shall file an objection to any such Claim, and contends that the Schrader Mortgage is not an obligation of the Debtor, does not form part of the purchase price for the Subject Property, and is avoidable as a fraudulent transfer. The Debtor may seek equitable subordination by objection, in the Adversary Proceeding, or at the Confirmation Hearing. No Distribution shall be made on account of any Insider Claim unless and until such Claim is Allowed by Final Order, after resolution of the Adversary Proceeding, after application of all rights of setoff, recoupment, and disallowance under section 502(d) of the Bankruptcy Code, and after payment in full of all Allowed Claims in Classes 1 through 5. Class 6 is Impaired and entitled to vote.

**Class 7 – Equity Interests**

The Debtor is a Florida not-for-profit corporation that recently obtained qualification as an organization exempt from federal income taxation pursuant to section 501(c)(3) of the Internal Revenue Code, as contemplated by the Transition Agreement. As a not-for-profit corporation, the Debtor does not issue equity capable of receiving distributions of profits, and no member, director, or officer is entitled to any distribution of the Debtor's income or assets. To the extent any person, including the Schraders on account of any stock subject

to the Irrevocable Proxy and Share Purchase Agreement in favor of Olanrewaju Fayiga, holds or asserts any Equity Interest in the Debtor, such Equity Interests shall receive no Distribution on account of such Equity Interests but will revest following confirmation consistent with the not-for-profit purposes approved both by the State of Florida and the United States of America, Department of Treasury.. Governance of the Reorganized Debtor shall be vested in the Educator Board as provided in Section 4.07. Class 7 is deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.

**Section 3.05 Elimination of Vacant Classes**.

Any Class of Claims or Equity Interests that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Equity Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing, shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

**Section 3.06 Distributions under the Plan**.

Whenever any Distribution to be made pursuant to the Plan shall be due on a day other than a Business Day, such Distribution shall instead be made on the immediately succeeding Business Day and shall be deemed to have been made on the date due. As of the close of business on the Confirmation Date, there shall be no further changes in the record holders of the Claims for Distributions under the Plan. The Debtor and the Reorganized Debtor shall have no obligation to recognize any transfer of Claims occurring after the Confirmation Date.

**Section 3.07 Distribution Deadlines**.

Any Distribution to be made by the Reorganized Debtor pursuant to the Plan shall be deemed to have been timely made if made within thirty (30) days after the time therefor specified in the Plan or such other agreements. No interest shall accrue or be paid with respect to any Distribution as a consequence of such Distribution not having been made on the date specified therefor herein. Notwithstanding the foregoing, payments to Capital City Bank under Class 3 shall be governed by the default notice and cure periods described in Class 3.

**Section 3.08 Manner of Payment under the Plan**.

Unless the person or entity receiving a payment agrees otherwise, any payment in cash to be made by the Debtor or Reorganized Debtor shall be made by check drawn on a domestic bank or by automated clearing house transfer.

**Section 3.09 De Minimis Distributions**.

The Reorganized Debtor shall not be required to make any cash payment of less than twenty-five dollars ($25.00) with respect to any Claim unless a request therefor is made in writing to the Reorganized Debtor on or before sixty (60) days after the Effective Date. Any *de minimis* Distributions not subject to a timely request for payment shall revert to the Debtor's Estate and be treated as an Asset available for Distribution pursuant to the Plan.

**Section 3.10 Unclaimed Distributions**.

The Reorganized Debtor shall maintain records of Unclaimed Distributions and shall hold the corresponding funds pending payment or disposition in accordance with this Section. Upon learning that a Distribution is undeliverable, the Reorganized Debtor shall make reasonable efforts to notify the holder using available contact information.

A holder may request payment or reissuance in writing and shall provide reasonably necessary information establishing its identity, entitlement, and current payment instructions. Unclaimed Distributions shall be administered in accordance with sections 347(b) and 1143 of the Bankruptcy Code, to the extent applicable. No forfeiture shall occur solely because a check becomes stale or a Distribution is returned. Before treating funds as forfeited, the Reorganized Debtor shall obtain an order establishing or enforcing the applicable deadline and directing disposition of the funds, after notice reasonably calculated to reach the affected holder.

**Section 3.11 Stale Checks and Reissuance**.

A Distribution check may be voided if not negotiated within one hundred eighty (180) days after issuance. Voiding a check is an administrative measure and does not extinguish the underlying payment obligation. Upon a timely written request under Section 3.10, and after reasonable verification that the original check has not been paid, the Reorganized Debtor shall reissue the payment without charging a reissuance fee.

**Section 3.12 Bar Date**.

All parties shall have to and including the Bar Date within which to file a Claim, or to amend a prepetition Claim to include post-petition interest, fees and costs incurred allowable pursuant to section 506(b) of the Bankruptcy Code. If any Claim, whether liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, Secured or Unsecured, is not filed on or before the applicable Bar Date, then such Claim shall be forever barred and shall not be enforceable against the Debtor or its Estate.

**Section 3.13 Distributions to Holders of Claims and Equity Interests**.

(a) **Estimation of Claims.** The Debtor or Reorganized Debtor, as applicable, may, at any time, request that the Bankruptcy Court, or any other court of competent jurisdiction, estimate any Claim not expressly Allowed by the Plan and otherwise subject to estimation under section 502(c) of the Bankruptcy Code and for which the Debtor may be liable under the Plan, including any Claim for taxes, to the extent permitted by section 502(c) of the Bankruptcy Code, regardless of whether any party in interest previously objected to such Claim. The Bankruptcy Court, or other court of competent jurisdiction, will retain jurisdiction to estimate any Claim pursuant to section 502(c) of the Bankruptcy Code at any time prior to the time that such Claim becomes an Allowed Claim. If the Bankruptcy Court, or other court of competent jurisdiction, estimates any contingent or unliquidated Claim, the estimated amount will constitute either the

Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court or other court of competent jurisdiction.

The objection, estimation, and resolution procedures set forth in the Plan are cumulative and not mutually exclusive of one another. Claims may be estimated by the Bankruptcy Court, or other court of competent jurisdiction, and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court or other court of competent jurisdiction.

(b) **No Recourse.** Notwithstanding that the Allowed amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount for which, after application of the payment priorities established by the Plan, there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no holder of a Claim shall have recourse against the Debtor, its Estate, the Reorganized Debtor, or any of their respective Professionals, consultants, officers, directors, or members or their successors or assigns, or any of their respective property. Except as specifically stated otherwise in the Plan, nothing in the Plan shall modify any right of a holder of a Claim under section 502(j) of the Bankruptcy Code.

THE ESTIMATION OF CLAIMS AND ESTABLISHMENT OF RESERVES UNDER THIS PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS IF THE ESTIMATION IS MADE SOLELY FOR THE PURPOSE OF ESTIMATING A MAXIMUM LIABILITY FOR RESERVE PURPOSES, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.

(c) **Automatic Disallowance and Expungement of Certain Claims.** On the Effective Date, all Claims filed after the applicable Bar Date, to the extent such Claims were required to have been filed on or in advance of such Bar Date under its terms, shall be expunged and Disallowed without any further notice to or action, order, or approval of the Bankruptcy Court.

**Section 3.14 Disputed Claims**.

(a) **Objections to Claims.** Unless otherwise ordered by the Bankruptcy Court, on and after the Effective Date, the Debtor or Reorganized Debtor shall have the exclusive right to make, file, and prosecute objections to and settle, compromise, or otherwise resolve Disputed Claims, except that as to applications for allowances of Professional Fee Claims, objections may be made in accordance with the applicable Bankruptcy Rules by parties in interest. Subject to further extension by the Bankruptcy Court, the Debtor or Reorganized Debtor shall file and serve a copy of any such objection upon the holder of the Claim to which an objection is made on or before the later of: (i) sixty (60) days after the Effective Date, (ii) thirty (30) days after a request for payment or Proof of Claim is timely filed and properly served upon the Debtor or Reorganized Debtor, and (iii) such other date as may be fixed by the Bankruptcy Court either before

or after the expiration of such time periods. Notwithstanding any authority to the contrary, any objection to a Claim shall be deemed properly served on the holder of the Claim if the Debtor or Reorganized Debtor effectuates service in any of the following manners: (i) in accordance with Federal Rule of Civil Procedure 4, as made applicable by Bankruptcy Rule 7004, (ii) by first class mail, postage prepaid, on the signatory of the Proof of Claim or other representative identified in the Proof of Claim or any attachment thereto at the address of the Creditor set forth therein, or (iii) by first class mail, postage prepaid, on any counsel that has appeared on behalf of the holder of the Claim in this Chapter 11 Case.

(b) **Resolution of Disputed Claims**. No Distribution or payment shall be made on account of a Disputed Claim until such Disputed Claim becomes an Allowed Claim. From and after the Effective Date, the Reorganized Debtor may settle or compromise any Disputed Claim or retained Cause of Action pursuant to the terms of the Plan without further order of the Bankruptcy Court.

(c) **Establishment of a Disputed Claims Reserve Account.** On or before the Effective Date, the Debtor or Reorganized Debtor, as applicable, shall reserve any funds sufficient to pay Disputed Claims, or their Pro Rata Share, in accordance with such Claims' treatment under the Plan in an escrowed or otherwise segregated account, which shall be administered by the Reorganized Debtor.

(d) **Duties in Connection with Disputed Claims.** On and before the Effective Date, the Debtor, and after the Effective Date, the Reorganized Debtor, shall (i) deposit into the reserved or escrowed account for Disputed Claims, described in subsection (c) above, cash in an amount equal to an amount required by order of the Bankruptcy Court, or other court of competent jurisdiction, including any order estimating the maximum liability of a Disputed Claim, or, in the absence of such order, cash in an amount equal to the Distribution that would have been made to the holder of such Disputed Claim if it were an Allowed Claim in a liquidated amount, if any, on the Effective Date, (ii) object to, settle, or otherwise resolve Disputed Claims, (iii) make Distributions to holders of Disputed Claims that subsequently become Allowed Claims in accordance with the Plan, and (iv) distribute any remaining assets of the account described in subsection (c) above in accordance with the Plan.

(e) **Distributions when Disputed Claims are Resolved.** On the next date on which Distributions are made following the date upon which a Disputed Claim is ultimately Allowed, the holder of such Claim shall receive from the reserve or escrow account described in subsection (c) above any amounts attributable to such Claim in accordance with the Plan. Any cash Distributions held in the reserve or escrow account for the benefit of a holder of a Disputed Claim that is ultimately Disallowed, in whole or in part, shall be treated as Assets to be Distributed according to the Plan.

**Section 3.15 Miscellaneous Distribution Provisions**.

(a) **Method of Cash Distributions**. All Distributions shall be made by the Reorganized Debtor or a duly appointed disbursing agent to the holders of Allowed Claims. Cash payments made pursuant to the Plan shall be made in United States dollars by checks drawn on a domestic bank selected by the Reorganized Debtor, provided, however, that cash payments made to foreign Creditors, if any, holding Allowed Claims may be, but are not required to be, paid, at the sole discretion of the Reorganized Debtor, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

(b) **No Distribution in Excess of Amount of Allowed Claim.** Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall receive, in satisfaction of such Claim, any Distribution in excess of the amount of such Allowed Claim plus interest, if any, as provided by the Plan.

(c) **Minimum Cash Distributions.** The Reorganized Debtor shall not be required to make any Distribution of cash in an amount less than twenty-five dollars ($25.00) to any holder of an Allowed Claim.

## ARTICLE IV
## IMPLEMENTATION OF THE PLAN

**Section 4.01 Implementation**.

The Debtor or Reorganized Debtor will implement this Plan in a manner consistent with the terms and conditions set forth in the Plan and the Confirmation Order. On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval of the Bankruptcy Court. Without limiting the foregoing, the Reorganized Debtor shall continue to perform under the Transition Agreement and the Building PSA, and shall close on the acquisition of the Subject Property on or before the closing deadline thereunder, as the same may be extended by agreement or order of the Bankruptcy Court.

**Section 4.02 Funding for the Plan**.

The Plan shall be funded from any Assets available to fund the Plan, including, without limitation, (a) the Debtor's cash on hand; (b) tuition and other revenue from the Debtor's prepetition and post-petition school operations and the Reorganized Debtor's post-Confirmation operations; (c) acquisition financing or refinancing obtained by the Reorganized Debtor; and (d) Litigation Proceeds and Avoidance Action Proceeds, including but not limited to recoveries in the Adversary Proceeding, and recoveries from the Schraders, jointly and severally, of tax penalties and interest allocated to them pursuant to the Transition Agreement.

**Section 4.03 Management of Reorganized Debtor**.

The Debtor's current management, under the direction of the Educator Board, shall remain management of the Reorganized Debtor post-confirmation. The constitution of the post-confirmation Educator Board, will be presented at the Confirmation Hearing, and may include Olanrewaju Fayiga as Principal and Education Board Member, Will Frazer as Teacher and Education Board Member, and Maxim Dolinsky as Education Board Member. The compensation of Olanrewaju Fayiga and Will Frazer shall remain at the levels approved by the Bankruptcy Court during the pendency of this Chapter 11 Case, which, as of the date of this filing, are $92,000.00 per year each, together with standard employee benefits, and Maxim Dolinsky shall serve without salary. The Educator Board will likely include additional members to be disclosed consistent with the Confirmation Hearing.

**Section 4.04 Restructuring Transactions.**

On the Effective Date, or as soon as reasonably practicable thereafter, the Reorganized Debtor may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the acquisition of the Subject Property and the incurrence of acquisition financing secured by the Subject Property.

**Section 4.05 Cancellation of Liens**.

Except as otherwise specifically provided herein, upon the payment in full of the Allowed Amount of a Secured Claim in accordance with this Plan, any Lien securing such Secured Claim shall be deemed released, and the holder of such Secured Claim shall be authorized and directed to release any Collateral or other property of the Debtor or its Estate held by such holder and to take such actions as may be requested by the Reorganized Debtor, to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases as may be requested by the Reorganized Debtor.

**Section 4.06 Vesting of Assets in the Reorganized Debtor**.

As of the Effective Date, pursuant to the provisions of sections 1141(b) and (c) of the Bankruptcy Code, all Assets, including the Debtor's legal and equitable interests in the Subject Property and its rights under the Transition Agreement, shall vest in the Reorganized Debtor free and clear of all Claims, Liens, encumbrances, charges, Equity Interests, and other interests, except as otherwise expressly provided in the Plan or the Confirmation Order, and subject to the terms and conditions of the Plan and the Confirmation Order. For the avoidance of doubt, all Causes of Action and Avoidance Actions shall vest in the Reorganized Debtor on the Effective Date.

**Section 4.07 Governance of the Reorganized Debtor.**

As of the Effective Date, the Reorganized Debtor shall be governed by the Educator Board.

**Section 4.08 General Settlement of Claims and Compromise of Controversies**.

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distributions, releases, and other benefits provided under the

Plan, on the Effective Date, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims, Equity Interests, and controversies resolved pursuant to the Plan, including, without limitation, all Claims arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, related to, or in connection with the business or affairs of or transactions with the Debtor. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, its Estate, the Creditors, and other parties in interest, and are fair and equitable and within the range of reasonableness.

**Section 4.09 Continuing Existence.**

From and after the Effective Date, the Debtor shall continue in existence as the Reorganized Debtor in accordance with the applicable laws of the jurisdiction in which it is organized for all purposes, including, among other things, (i) enforcing and prosecuting claims, interests, rights, and privileges of the Debtor, including, without limitation, prosecuting Causes of Action; (ii) resolving Disputed Claims; (iii) administering the Plan; (iv) filing appropriate tax returns and refund requests; and (v) performing all such other acts and conditions required by and consistent with consummation of the Plan.

**Section 4.10 Organizational Documents**.

On the Effective Date, the Reorganized Debtor's organizational documents shall be amended as necessary to (a) prohibit the issuance of nonvoting equity securities and (b) implement the governance and not-for-profit conversion provisions of Section 4.07.

**Section 4.11 Notice of Effective Date**.

Not later than five (5) Business Days following the Effective Date, the Reorganized Debtor shall file a notice of the occurrence of the Effective Date of the Plan in accordance with the Bankruptcy Rules and orders of the Bankruptcy Court.

**Section 4.12 Employee Matters and Retiree Benefits**.

Unless otherwise set forth in the schedule of rejected Executory Contracts included in the Plan Supplement, all material employee compensation and benefit plans, and employment, severance, retirement, indemnification, and other similar employee-related agreements or arrangements in place as of the Effective Date with the Debtor shall be assumed by the Reorganized Debtor and shall remain in place after the Effective Date, as such agreements may be amended by agreement between the beneficiaries of such agreements and the Debtors or, after the Effective Date, the Reorganized Debtor. Nothing in the Plan shall limit, diminish, or otherwise alter the Reorganized Debtor's defenses, Claims, Causes of Action, or other rights with respect to any such contracts, agreements, policies, programs, and plans. Notwithstanding the foregoing, pursuant to section 1129(a)(13) of the Bankruptcy Code, on and after the Effective Date, all retiree benefits (as that term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

**Section 4.13 Corporate Action**.

The Confirmed Plan will be administered by the Reorganized Debtors, and all actions taken under the Plan in the name of the Debtors shall be taken through the Reorganized Debtors.

**Section 4.14 Powers and Duties of the Reorganized Debtor**.

The Reorganized Debtor will act for the Debtor in a fiduciary capacity as applicable to a board of directors or trustees, subject to the provisions of the Plan. The powers and duties of the Reorganized Debtor shall include, without limitation:

(a) investing cash in accordance with section 345 of the Bankruptcy Code, and withdrawing and making Distributions of cash to holders of Allowed Claims and paying taxes and other obligations owed by the Debtor or incurred by the Reorganized Debtor in accordance with the Plan;

(b) engaging attorneys, consultants, agents, employees, and any other Professional to assist the Reorganized Debtor with respect to the Reorganized Debtor's responsibilities;

(c) executing and delivering all documents and taking all actions which may be necessary to consummate the Plan;

(d) coordinating the turnover of property, if any, subject to rejected executory contracts or abandonment or liquidation of any retained assets;

(e) coordinating the collection of outstanding accounts receivable;

(f) coordinating the storage and maintenance of the Debtor's books and records;

(g) overseeing compliance with the Debtor's accounting, finance, and reporting obligations;

(h) preparing financial statements and U.S. Trustee post-confirmation quarterly reports, until such time as a final decree has been entered;

(i) overseeing the filing of final tax returns, refund requests, audits, and other corporate dissolution documents, as required;

(j) paying the fees and expenses of the attorneys, consultants, agents, employees, and other Professionals engaged by the Debtor and the Reorganized Debtor subject to the terms of the Plan;

(k) objecting to, compromising, and settling Claims;

(l) acting on behalf of the Debtor in all adversary proceedings and contested matters (including, without limitation, any Causes of Action), then pending or that can be commenced in the Bankruptcy Court and in all actions and proceedings pending or commenced elsewhere, and to

settle, retain, enforce, dispute, or adjust any claim and otherwise pursue actions involving the Debtor's Assets that could arise or be asserted at any time under the Bankruptcy Code, unless otherwise waived or relinquished in the Plan;

(m) implementing and/or enforcing all provisions of the Plan; and

(n) such other powers as may be vested in or assumed by the Reorganized Debtor pursuant to the Plan or other Order of the Bankruptcy Court, or as may be needed or appropriate to carry out the provisions of the Plan.

**Section 4.15 Confidentiality and Privilege**.

On and after the Effective Date, unless the case is converted to a case under chapter 7 of the Bankruptcy Code, any of the Debtor's and Debtor-in-Possession's confidentiality obligations, attorney-client privilege, or other privilege or immunity attaching to any documents or communications shall vest in the Reorganized Debtor and its representatives, and its representatives shall not otherwise waive such confidentiality, privilege, or immunity without prior notice or a hearing before the Bankruptcy Court. The Reorganized Debtor is authorized to take all actions it deems necessary to transfer such privilege, and any documents or communications that would otherwise be protected from discovery by virtue of any applicable privilege or immunity shall remain so protected. The Confirmation Order shall provide that the Reorganized Debtor's receipt of the transferred privileges shall be without waiver in recognition of the joint and/or successorship interest in prosecuting claims on behalf of the Debtor's Estate. If any privileged documents are inadvertently produced to third parties, such production shall not be deemed to destroy any privilege or be deemed a waiver of any confidentiality protections afforded to such privileged documents.

**Section 4.16 Retention of Professionals**.

The Reorganized Debtor shall have the right to retain the services of attorneys, accountants, and other Professionals that are necessary to assist the Reorganized Debtor in the performance of its duties or otherwise under this Plan. Shumaker, Loop & Kendrick, LLP has provided legal services to the Debtor on a pro bono basis since the Petition Date and may, at its election, continue to provide such services on a pro bono basis to the Reorganized Debtor. The reasonable fees and expenses for such Professionals and the additional expenses incurred in the Reorganized Debtor's performance of its duties under this Plan shall be paid from the Reorganized Debtor's Assets and shall not be subject to the approval of the Bankruptcy Court. If there are insufficient funds available to pay all fees and expenses of such Professionals in full, such Professionals shall receive Pro Rata Shares in the available funds until payment in full is made.

**Section 4.17 Setoffs**.

The Reorganized Debtor is authorized, pursuant to and to the extent permitted by applicable law, to set off against any Allowed Claim and the Distributions to be made on account of such Allowed Claim the claims, rights, and Causes of Action of any nature that the Debtor or the Reorganized Debtor, as applicable, may hold against the holder of such Allowed Claim. Neither the failure to effect such setoff nor the allowance of any Claim under the Plan shall

constitute a waiver or release by the Debtor or Reorganized Debtor of any such claims, rights, and Causes of Action that the Debtor or Reorganized Debtor may have against such holder.

**Section 4.18 Exemption from Transfer Taxes**.

Pursuant to section 1146(a) of the Bankruptcy Code, the assignment or transfer of any lease or sublease, the delivery, making, filing, or recording of any deed or other instrument of transfer, or the issuance, transfer, or exchange of any security under the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition of Assets contemplated by the Plan shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax to the maximum extent provided by section 1146 of the Bankruptcy Code.

**Section 4.19 Disputed Payments**.

If any dispute arises as to the identity of a holder of an Allowed Claim that is to receive any Distribution, the Reorganized Debtor may, in lieu of making such Distribution to such person, make such Distribution to an escrow or reserve account to be held in trust for the benefit of such holder and such Distribution shall not constitute property of the Debtor or its Estate. Such Distribution shall be held in escrow or reserve until the disposition thereof shall be determined by order of the Bankruptcy Court or other court of competent jurisdiction or by written agreement signed by all of the interested parties to such dispute.

**Section 4.20 Withholding Taxes**.

The Reorganized Debtor shall not be required to withhold taxes or comply with any applicable reporting requirements. The recipients of Distributions shall be required to comply with all applicable laws and regulations concerning the reporting and taxing of any Distributions. If requested by the recipient of a Distribution, the Reorganized Debtor shall issue an IRS Form 1099.

**Section 4.21 Liability; Indemnification; No Agency Relationship**.

The Reorganized Debtor shall not be deemed to be the agent for any of the holders of Claims in connection with the funds held or distributed pursuant to the Plan. The Reorganized Debtor shall not be liable for any mistake of fact or law or error of judgment or any act or omission of any kind unless it constitutes gross negligence or willful misconduct or breach of fiduciary duty. The Reorganized Debtor shall be indemnified and held harmless, including the cost of defending such claims and attorneys' fees in seeking indemnification, by the Estate against any and all claims arising out of its duties under the Plan, except to the extent its actions constitute gross negligence or willful misconduct or breach of fiduciary duty. The Reorganized Debtor may conclusively rely, and shall be fully protected personally in acting upon, any statement, instrument, opinion, report, notice, request, consent, order, or other instrument or document which it believes to be genuine and to have been signed or presented by the proper party or parties. The Reorganized Debtor may rely upon information previously generated by the Debtor and such additional information provided to it by former employees of the Debtor.

## ARTICLE V
## EFFECT OF PLAN ON CLAIMS, INTERESTS, AND CAUSES OF ACTION

**Section 5.01 Binding Effect**.

Except as otherwise provided in section 1141 of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any and all holders of a Claim or interest against the Debtor who held such Claim or interest at any time during this Chapter 11 Case and its respective successors and assigns, whether or not the Claim or interest of such holder is Impaired under the Plan and whether or not such holder has accepted (or has been deemed to accept) the Plan.

**Section 5.02 Term of Injunction or Stays**.

Unless otherwise provided herein, all injunctions or stays provided for in this Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until a final decree is filed and this Chapter 11 Case is closed.

**Section 5.03 Retention of Rights and Causes of Action**.

**Except as provided in the Plan, all present or future rights, claims, or Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtor holds or held on behalf of its Estate, in accord with any provision of the Bankruptcy Code or any applicable nonbankruptcy law, as against any person or entity that have not been released or sold on or prior to the Effective Date are preserved for the Reorganized Debtor. On the Effective Date, pursuant to section 1123(b)(3) of the Bankruptcy Code, the Reorganized Debtor shall have possession and control of, and shall retain and have the right to enforce and pursue, any and all present or future rights, claims, or Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses against any person or entity and with respect to any rights of the Debtor or its Estate that arose before or after the Petition Date, including, but not limited to, those arising by operation of bankruptcy law in favor of the Debtor-in-Possession. The Reorganized Debtor has, retains, reserves, and shall be entitled to assert and pursue all such claims, Causes of Action, rights of setoff, or other legal or equitable defenses, and all legal and equitable rights of the Debtor and its Estate not expressly released under the Plan that may be asserted after the Effective Date. The Reorganized Debtor, as applicable, may abandon, settle, or release any or all such claims, rights, or Causes of Action, as it deems appropriate without further order of the Bankruptcy Court. In pursuing any claim, right, or Cause of Action, the Reorganized Debtor, as the representative of the Estate, shall be entitled to the extensions provided under section 108 of the Bankruptcy Code. Except as otherwise provided in the Plan, all Causes of Action shall survive Confirmation, and the commencement or prosecution of Causes of Action shall not be barred or limited by any estoppel, whether judicial, equitable, or otherwise.**

**Without limiting the foregoing, the Reorganized Debtor expressly retains, and shall be entitled to prosecute, (a) all claims asserted in the Adversary Proceeding, including the Debtor's claims of equitable ownership of the Subject Property and for specific performance**

**of the Transition Agreement; (b) all Avoidance Actions and other claims arising from transfers of the Debtor's property to NCCS, the Schraders, Little Warriors Day School, LLC, and as against any of their affiliates, including transfers of at least $2,084,656.86 to NCCS, $2,336,983.33 to James R. Schrader, $171,762.40 to Rachel E. Schrader, and $72,000.00 to Little Warriors Day School, LLC; (c) claims for treble damages, conversion, breach of fiduciary duty, and fraudulent transfer against the Schraders and NCCS; (d) objections to, and claims to avoid or determine the validity of the Schrader Mortgage, the Lien asserted by the Dudases, and the Liens asserted by holders of other Class 4 Claims; and (e) claims for turnover of the Debtor's books and records.**

**Section 5.04 Releases by Holders of Claims and Interests**.

**As of the Effective Date, except as otherwise provided in the Plan or arising from intentional fraud, gross negligence, or willful misconduct, the Releasing Parties are deemed to have released the Debtor and the Estate from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any direct claims held by any of the Releasing Parties against the Debtor or the Estate or derivative claims asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that each Releasing Party would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor or its affiliates, this Chapter 11 Case, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Releasing Party, the restructuring of Claims and Interests before or in this Chapter 11 Case, the negotiation, formulation, or preparation of the Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence relating to the Debtor or Debtor-in-possession taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan.**

**Section 5.05 Injunction and Exculpation**.

(a) **Satisfaction of Claims.** The treatment to be provided for Allowed Claims shall be in full satisfaction, settlement, and release of each such Claim.

(b) **Scope of Injunction**. Except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date, all persons or entities that hold a Claim are permanently enjoined from taking any of the following actions against the Debtor and the Estate: (i) commencing or continuing in any manner any action or other proceeding with respect to a Claim or based upon a theory which arises out of such holder's Claim; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order with respect to a Claim that was entered or granted prior to the Petition Date; (iii) creating, perfecting, or enforcing any lien or encumbrance with respect to a Claim; (iv) asserting a setoff, right of subrogation, or recoupment of any kind with respect to a Claim, the Assets, or other property of the Debtor's Estate; and (v)

commencing or continuing any action that does not comply with or is inconsistent with the Plan, including, without limitation, the eviction proceeding styled Case No. 2026-CA-001730 in the Circuit Court of the Eighth Judicial Circuit in and for Alachua County, Florida. Nothing shall preclude the holder of a Claim from pursuing any applicable insurance after this Chapter 11 Case is closed, from seeking discovery in actions against third parties, or from pursuing third-party insurance that does not cover Claims against the Debtor. For the avoidance of doubt, nothing in this injunction shall limit the rights of a holder of a Claim to enforce the terms of the Plan.

(c) **Release of Collateral.** Except as expressly provided herein, unless a holder of a Secured Claim receives a return of its Collateral in respect of such Claim under the Plan, and in exchange for the treatment afforded by this Plan: (a) each holder of (i) an Allowed Secured Claim and/or (ii) an Allowed Claim that is purportedly secured, on the Effective Date shall (1) turn over and release to the Debtor or Reorganized Debtor, as applicable, any and all property that secures or purportedly secures such Claim, and (2) execute such documents and instruments as the Debtor or Reorganized Debtor, as applicable, require to evidence such holder's release of such property; and (b) on the Effective Date, all Claims, rights, title, and interest in such property shall revert to the Debtor or Reorganized Debtor, as applicable, free and clear of all Claims, including (without limitation) Liens, charges, pledges, encumbrances, and/or security interests of any kind. No Distribution shall be made to or on behalf of any holder of any such Claim unless and until such holder executes and delivers to the Reorganized Debtor such release of Liens. Any such holder that fails to execute and deliver such release of Liens within sixty (60) days of any demand thereof shall be deemed to have no further Claim and shall not participate in any Distribution hereunder. Notwithstanding the immediately preceding sentence, a holder of a Disputed Claim shall not be required to execute and deliver such release of Liens until the time such Claim is Allowed or Disallowed.

(d) **Cause of Action Injunction. On and after the Effective Date, all persons and entities other than the Debtor and Reorganized Debtor will be permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively, or otherwise) on account of, or respecting any Claim, debt, right, or Cause of Action that the Debtor and Reorganized Debtor retain or receive, as applicable, authority to pursue in accord with this Plan.**

(e) **Exculpation. Except as otherwise set forth in the Plan, neither the Debtor, nor the Reorganized Debtor, nor any of their respective current or former members, directors, officers, trustees, employees, agents (acting in such capacity), advisors, attorneys, nor representatives of any Professional employed by any of them shall not have or incur any liability to any person or entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, or any contract, release, or other agreement or document created or entered into, or any other action taken or omitted to be taken in**

**connection with the Plan, the administration of the Plan or property to be distributed pursuant to the Plan, and any and all actions taken or omitted to be taken in connection with this Chapter 11 Case or the operations, monitoring, or administration of the Debtor or its Estate during this Chapter 11 Case, and the Debtor or Reorganized Debtor shall have no liability for any actions taken or omitted to be taken in connection with or related to the post-confirmation administration of the Estate, except for intentional fraud, gross negligence, or willful misconduct.**

**Section 5.06 Preservation and Application of Insurance**.

The provisions of the Plan shall not diminish or impair in any manner the enforceability of coverage of any insurance policies covering the Debtor or its Estate and insuring as against any risk, including environmental (and any agreements, documents, or instruments relating thereto) that may cover Claims against the Debtor or its Estate, any of the Debtor's directors, trustees, or officers, or any other person or entity, including, without limitation, insurance for the Debtor's directors and officers.

**Section 5.07 Solicitation of Plan**.

As of and subject to the occurrence of the Confirmation Date: (a) the Debtor and Debtor-in-Possession, along with its Professionals, shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation, and (b) the Debtor and its directors, officers, employees, affiliates, agents, financial advisors, investment bankers, Professionals, accountants, and attorneys shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance, and solicitation will not be, liable at any time for any violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of any securities under the Plan.

**Section 5.08 Post-Confirmation Activity**.

As of the Effective Date, the Debtor or the Reorganized Debtor, as applicable, may conclude the implementation of the Plan without supervision of the Bankruptcy Court, other than those restrictions expressly imposed by the Plan and the Confirmation Order. Without limiting the foregoing, the Debtor and the Reorganized Debtor, as applicable, may pay any charges he, she, or it incurs for taxes, Professional Fees, disbursements, expenses, or related support services after the Effective Date without application to and approval of the Bankruptcy Court.

**Section 5.09 Post-Confirmation Powers**.

Except as specifically set forth herein, the Debtor or Reorganized Debtor, as applicable, shall continue to have all powers conferred upon it by the Bankruptcy Code, the Plan, and the Confirmation Order until the Plan is fully consummated, and this Chapter 11 Case is closed. The

Debtor or Reorganized Debtor, as applicable, is specifically authorized to perform such actions and make such decisions as it may determine advisable to perfect execution of this Plan, provided that the acts are consistent with governing law, the Bankruptcy Code and the Plan.

**Section 5.10 Retention of Insurance Claims and Avoidance Actions.**

On the Effective Date, the Reorganized Debtor shall be deemed the successor to any and all Avoidance Actions that a trustee, debtor-in-possession, or other appropriate party in interest would be able to assert on behalf of the Debtor under applicable state statutes or the avoidance provisions of chapter 5 of the Bankruptcy Code, including actions under one or more of the provisions of Bankruptcy Code sections 502, 506, 541 through 551, and 553, including, without limitation, the actions specifically retained as Causes of Action and Avoidance Actions.

**Section 5.11 No Release of Claims Against Former Management.**

Notwithstanding anything to the contrary in this Plan, nothing in this Plan or the Confirmation Order shall release, waive, exculpate, enjoin, or discharge any claim or Cause of Action of the Debtor or its Estate against NCCS, the Schraders, Little Warriors Day School, LLC, or any of their respective affiliates, or against any former officer, director, employee, or bookkeeper of the Debtor who served prior to December 18, 2025.

## ARTICLE VI
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**Section 6.01 Executory Contracts and Unexpired Leases**.

The School Transition Agreement was assumed pursuant to motion and Order entered on or about October 2, 2026 (Doc. 204). Additionally, on the Confirmation Date, to the extent not previously assumed or rejected, all of the Debtor's other executory contracts shall be deemed rejected by the Debtor pursuant to the provisions of section 365 of the Bankruptcy Code.

**Section 6.02 Claims Based on Rejection of Executory Contracts or Unexpired Leases**.

If rejection of an executory contract or unexpired lease pursuant to this Plan results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the Debtor, the Reorganized Debtor or its property unless a proof of claim is filed with the Bankruptcy Court and served upon the Debtor no later than 30 days after the later of: (a) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, or (b) the effective date of such rejection. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time shall be automatically Disallowed, forever barred from assertion, and shall not be enforceable against the Debtor, its Estate, the Reorganized Debtor, or the Debtor's property, without the need for any objection by the Debtor or Reorganized Debtor, as applicable, or further notice to, or action, order, or approval of the Bankruptcy Court or any other person or entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall**

**be deemed fully satisfied, released, and discharged, notwithstanding anything in the Proof of Claim to the contrary.** Any Claim, to the extent Allowed, arising from the rejection of an Executory Contract or Unexpired Lease shall be classified as a Class 5 General Unsecured Claim (or, if held by an insider, a Class 6 Insider Claim) and shall be treated in accordance with the treatment for such Class under the Plan and may be objected to in accordance with the Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

**Section 6.03 Notice and Determination of Cure Disputes and Deemed Consent**.

Any monetary amounts by which any executory contract or unexpired lease to be assumed or assumed and assigned, as applicable, herein is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by the Reorganized Debtor promptly upon assumption thereof. At least twenty (20) days before the Confirmation Hearing, the Debtor shall serve a notice on parties to executory contracts and unexpired leases to be assumed or assumed and assigned, as applicable, reflecting the Debtor's intention to assume or assume and assign, as applicable, the contract or unexpired lease in connection with the Plan and setting forth the proposed cure amount (if any). If a counterparty to any executory contract or unexpired lease does not receive such a notice, the proposed cure amount for such contract or lease shall be deemed to be zero dollars ($0).

Disputes pertaining to the assumption or assumption and assignment of an executory contract or unexpired lease shall be heard by the Bankruptcy Court prior to such assumption and assignment being effective; provided, however, before the Effective Date, the Debtor or the Reorganized Debtor, as applicable, may settle any dispute regarding a cure amount without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

Any counterparty to any executory contract or unexpired lease that fails to object timely to the notice of the proposed assumption or assignment, as applicable, of such contract or lease or the relevant cure amount within ten (10) days of the service thereof, (i) shall be deemed to have assented to (A) such cure amount, (B) assumption or assumption and assignment, as applicable, of the applicable contract or lease notwithstanding any provision thereof that purports to (1) prohibit, restrict, or condition the transfer or assignment of such contract or lease, or (2) terminate or permit the termination of a contract or lease as a result of any direct or indirect transfer or assignment of the rights of the Debtor under such contract or lease or a change, if any, in the ownership or control to the extent contemplated by the Plan, and shall forever be barred and enjoined from asserting such objection against the Debtor or the Reorganized Debtor or terminating or modifying such contract or lease on account of the transactions contemplated by the Plan, and (ii) shall be forever barred, estopped, and enjoined from challenging the validity of such assumption or assumption and assignment, as applicable, or the Allowed amount of the cure amount. Any untimely request for any additional or different Cure amount against the Debtor or Reorganized Debtor, as applicable, shall be Disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against the Debtor or Reorganized Debtor, as applicable, without the need for objection by the Reorganized Debtor or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.

Nothing contained in this Plan and exhibits thereto or the Plan Supplement, if any, shall constitute an admission by the Debtor or any other party that a contract or lease is in fact an

Executory Contract or unexpired lease or that the Debtor, Debtor-in-Possession or Reorganized Debtor have any liability thereunder. If there is a cure dispute or a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection under the Plan, the Debtor or Reorganized Debtor, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease.

**Section 6.04 Payments Related to Assumption or Assignment of Contracts.**

The Debtor or Reorganized Debtor, as applicable, shall pay the Cure amounts, if any, on the Effective Date or as soon as reasonably practicable thereafter or on such other terms as the parties to such Executory Contract or Unexpired Lease may agree, provided however that if a dispute regarding the assumption, assumption and assignment, or Cure is unresolved as of the Effective Date, then payment of the applicable Cure amount shall occur as soon as reasonably practicable after such dispute is resolved.

Assumption or assumption and assignment, as applicable, of any executory contract or unexpired lease pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the cure amount, whether monetary or nonmonetary, including defaults of provisions relating to change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time before the effective date of the assumption or assumption and assignment, as applicable. Any proofs of claim filed with respect to any executory contract or unexpired lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other entity, upon the deemed assumption of such contract or unexpired lease.

**Section 6.05 Effect of Post-Confirmation Rejection.**

The entry by the Bankruptcy Court on or after the Confirmation Date of an order authorizing the rejection of an executory contract or unexpired lease entered into prior to the Petition Date shall result in such rejection being a prepetition breach under sections 365(g) and 502(g) of the Bankruptcy Code.

## ARTICLE VII
## CONDITIONS TO OCCURRENCE OF EFFECTIVE DATE

**Section 7.01 Conditions to Occurrence of Effective Date**.

The Effective Date for the Plan may not occur unless each of the conditions set forth below is satisfied.

(a) The Bankruptcy Court shall have entered the Confirmation Order in form and substance satisfactory to the Debtor, and it shall have become a Final Order and shall not have been stayed, modified, or vacated on appeal.

(b) The Confirmation Order shall provide for the releases, injunctions, and exculpation of the Released Parties as provided for by the Plan.

(c) The Reorganized Debtor or its designee shall have agreed to act as such in accordance with the terms and conditions of the Plan.

(d) All actions, documents, and agreements necessary to implement and consummate the Plan shall have been effected or executed and binding on all parties thereto, including receipt of any necessary funding pursuant to this Plan.

(e) All governmental and third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan shall have been obtained, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions.

## ARTICLE VIII
## GENERAL PROVISIONS

**Section 8.01 Severability**.

If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

**Section 8.02 Captions**.

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**Section 8.03 Governing Law**.

Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other laws apply, the laws of the State of Florida and the United States of America, as applicable, shall govern the rights and

obligations arising under the Plan, and any agreements, documents, and instruments executed in connection with this Plan, without giving effect to principles of conflicts of law of Florida.

**Section 8.04 Modifications or Amendments**.

The Debtor retains the right to amend, modify, or supplement this Plan at any time prior to or after the Confirmation Hearing, to the full extent that this is authorized by law. Notice of any amendment which materially adversely affects any Creditors or Equity Interest Holders shall be sent to such parties as the Bankruptcy Court may direct.

**Section 8.05 Notices**.

Any notice required or permitted to be provided to the Debtor or Reorganized Debtor under the Plan, unless otherwise provided herein, shall be in writing and served by (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) overnight delivery service, postage prepaid, and addressed as follows:

Steven M. Berman, Esq.
Shumaker, Loop & Kendrick, LLP
101 E. Kennedy Blvd., Ste. 2800
Tampa, FL 33602

**Section 8.06 Construction**.

Where not inconsistent or in conflict with this Plan, the words and phrases used herein shall have the meanings ascribed thereto in the Bankruptcy Code and in the Bankruptcy Rules.

**Section 8.07 Dates**.

Bankruptcy Rule 9006 shall govern the calculation of any dates or deadlines referenced in the Plan.

**Section 8.08 Additional Acts or Documents**.

All holders of Claims, interests or Equity Interests, and all other persons or entities bound by this Plan shall, upon request, execute all documents and perform all acts reasonably necessary or appropriate to carry out the Plan.

**Section 8.09 Retention of Jurisdiction**.

Notwithstanding Confirmation of the Plan or occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction and authority for all purposes permitted under applicable law, including, without limitation, for the following purposes:

(a) to determine any motion, adversary proceeding, avoidance action, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date;

(b) to hear and determine applications for the assumption or rejection of Executory Contracts or unexpired leases and the allowance, estimation, or payment of Claims and Cure disputes resulting therefrom;

(c) to ensure that Distributions to holders of Allowed Claims are accomplished as provided herein and to adjudicate any and all disputes arising from or relating to Distributions under the Plan;

(d) to hear and determine objections to the allowance of Claims, whether filed, asserted, or made before or after the Effective Date, including, without limitation, to hear and determine objections to the classification of Claims and the allowance or disallowance of Disputed Claims, in whole or in part;

(e) to consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim; provided, however, that the District Court shall have jurisdiction to estimate any Claim that cannot be estimated by the Bankruptcy Court;

(f) to enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(g) to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any person or entity with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(h) to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i) to hear and determine all Professional Fee Claims;

(j) to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Plan Supplement, if any, the Confirmation Order, or any transactions or payments contemplated hereby or thereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(k) to take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan and settlements or compromises arising thereunder, including any release or injunction provisions set forth herein or therein, or to maintain the integrity of the Plan following consummation;

(l) to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m) to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(n) to enter a final decree closing this Chapter 11 Case;

(o) to recover all assets of the Debtor and property of its Estate, wherever located;

(p) to hear and determine any rights, Claims, or Causes of Action held by or accruing to the Debtor pursuant to the Bankruptcy Code or pursuant to any statute or legal theory;

(q) to hear and determine any matters for which jurisdiction was retained by the Bankruptcy Court pursuant to prior orders; and

(r) to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code, title 28 of the United States Code, and other applicable law.

**Section 8.10 Effectuating Documents and Further Transactions**.

The Debtor or Reorganized Debtor, as applicable, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such action as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**Section 8.11 Waiver of Bankruptcy Rule 3020(e)**.

The Debtor or Reorganized Debtor, as applicable, may request that the Confirmation Order include (a) a finding that the Plan be immediately binding and enforceable; and (b) authorization for the Debtor or Reorganized Debtor, as applicable, to consummate the Plan immediately after entry of the Confirmation Order.

**Section 8.12 No Admissions**.

Notwithstanding anything herein to the contrary, nothing contained in the Plan or the Disclosure Statement shall be deemed as an admission by the Debtor or Reorganized Debtor, as applicable, with respect to any matter set forth herein.

**Section 8.13 Payment of Statutory Fees**.

All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court on the Confirmation Date, shall be paid on the Effective Date. Any statutory fees accruing after the Confirmation Date shall be paid in accordance with the Plan.

**Section 8.14 Successors and Assigns**.

The rights, benefits, and obligations of any person or entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the heir, executor, administrator, successor, or assign of such person or entity.

**Section 8.15 Substantial Consummation.**

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

**Section 8.16 Post-confirmation Fees and Reports.**

Unless otherwise ordered by the Bankruptcy Court, the Debtor or Reorganized Debtor, as applicable, shall be responsible for the timely payment of all fees incurred pursuant to section 1930 of title 28 of the United States Code. Unless otherwise ordered by the Bankruptcy Court, the Debtor or Reorganized Debtor, as applicable, also shall file with the Bankruptcy Court, and serve on the U.S. Trustee, a quarterly financial report for each quarter (or portion thereof) that this Chapter 11 Case remains open, in a format prescribed by the U.S. Trustee.

In accordance with Local Rule 2081-1(B), (a) counsel for the Debtor shall submit the proposed Confirmation Order within twenty-one (21) days after the hearing at which the Plan is confirmed and shall serve the Confirmation Order and the confirmed Plan on all creditors and the U.S. Trustee; (b) because the Plan requires longer than one hundred twenty (120) days for consummation, the Reorganized Debtor shall file a Confirmed Plan Status Report beginning the third month after the Effective Date and every three (3) months thereafter; and (c) because the Plan provides for payments to certain Classes over a period longer than one hundred eighty (180) days from the Confirmation Date, the Reorganized Debtor shall deliver to each holder of an Allowed Claim in those Classes an instrument evidencing the indebtedness within thirty (30) days after all objections to Claims in that Class have been resolved or, if there are no objections to Claims in that Class, within sixty (60) days after entry of the Confirmation Order, as required by Local Rule 2081-1(B)(2)(b). Upon substantial consummation, the Reorganized Debtor shall file a motion for final decree in accordance with Local Rule 3022-1(A).

**Section 8.17 Exemption from Transfer Taxes.**

Pursuant to Section 1146(a) of the Bankruptcy Code, (a) the issuance, transfer or exchange of equity securities under this Plan; (b) the creation of any mortgage, deed of trust, lien, pledge or other security interest; or (c) the making or delivery of any deed or other instrument of transfer under this Plan, including, without limitation, merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale, and transfers of tangible property, will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee or other similar tax or governmental assessment in the United States. The Confirmation Order shall direct the appropriate federal, state, or local governmental officials or agents to forgo the collection of any such tax or governmental

assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

Dated October 9, 2026.

Respectfully Submitted,

Frazer School, Inc.

By: _Olanrewaju Fayiga_

Title: _Principal and Board Member___________